IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:08-CV-209-D

ROBERT THOMAS FINLEY,                )
                                     )
                Plaintiff,           )
                                     )
        v.                           )        **MEMORANDUM AND**
                                     )        **RECOMMENDATION**
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
                Defendant.           )

In this action, plaintiff Robert Thomas Finley ("plaintiff") challenges the final decision of

defendant Commissioner of Social Security ("Commissioner") denying his application for a period

of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on

the grounds that plaintiff is not disabled.[1] The case is before the court on the respective parties'

motions for judgment on the pleadings. (D.E. 22, 29). Plaintiff filed a memorandum in support of

his motion (D.E. 23) and one in opposition to the Commissioner's motion (D.E. 35), and the

Commissioner a memorandum in support of his motion (D.E. 30). The motions were referred to the

undersigned Magistrate Judge for memorandum and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B). (*See* D.E. 34). For the reasons set forth below, it will be recommended that the

Commissioner's motion for judgment on the pleadings be granted, plaintiff's motion for judgment

on the pleadings be denied, and the final decision of the Commissioner be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

# I. BACKGROUND

## A.    STANDARDS FOR DISABILITY

### 1. Five-Step Analysis

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

2

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.
. . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### 2. Materiality of Drug Addiction or Alcoholism ("DAA")

If under this analysis a claimant is found to be disabled and there is medical evidence that the claimant has DAA, an additional determination is required—namely, whether the DAA is a contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). If the DAA is found to be material, the claimant cannot be considered disabled under the Act. *See*

3

42 U.S.C.A. §§ 423(d)(2)(C), 1382c(a)(3)(J) (providing that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled"). The burden of proving that the DAA is not material falls on the claimant. *Bridgeman v. Astrue*, No. 4:07-CV-81-D, 2008 WL 1803619, at *3 (E.D.N.C. 21 Apr. 2008) (citing *Sanders v. Apfel*, No. 3:00-CV-296-H, 2001 WL 114360, at *6 (W.D.N.C. Jan. 26, 2001)); *see also Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (holding that a claimant bears the burden of proving that drug or alcohol addiction is not contributing factor material to her disability).

The key factor examined in making the materiality determination on DAA is whether the claimant would still be disabled if he stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). To make this determination, an evaluation is made regarding which of the physical and mental limitations that the claimant has when using drugs or alcohol would remain if he stopped such use and then whether any of the remaining limitations would be disabling. *Id.* If the remaining limitations are found not disabling, the claimant's DAA is deemed a contributing factor material to the determination of disability, and the claimant is determined to be not disabled. *Id.* §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). On the other hand, if the remaining limitations are found to be disabling, the DAA is deemed not to be material, and the claimant is deemed disabled. *Id.* §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

## B.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on 29 April 2004, alleging a disability onset date of 3 April 2004 due to depression, bipolar disorder, and schizophrenia. Transcript of Proceedings ("Tr.") 56-58, 611-13, 655. The application was denied initially on 31 March 2005 (*id.* 45-49) and

4

on reconsideration on 8 July 2005 (*id.* 51-53) and a request for hearing was timely filed on 9 September 2005 (*id.* 34). On 14 September 2007, a hearing was held before an Administrative Law Judge ("ALJ"). *Id.* 643-74.

In a written decision dated 25 September 2007, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. *Id.* 12-26. Plaintiff timely requested review by the Appeals Council on 2 November 2007 (*id.* 11) and on 4 February 2008 submitted, along with correspondence, one new evidentiary exhibit consisting of records of a mental health-related hospitalization of plaintiff in November 2007, after issuance of the ALJ's decision (*id.* 628-42). On 3 March 2008, the Appeals Council denied plaintiff's request for review after accepting and considering the additional submission. *Id.* 7-10. Plaintiff then commenced this proceeding for judicial review on 6 May 2008 pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). *See* Compl. (D.E. 4).

### C. FINDINGS OF THE ALJ

Plaintiff was 29 years old on the alleged onset date of disability and 33 years old on the date of the administrative hearing. Tr. 25. Plaintiff has a "limited education" (*id.* 25) and his past work experience includes work as a construction worker, roofer, furniture assembler, and quilt stuffer. *Id.* 24.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. *Id.* 18 ¶ 2. At step two, the ALJ found that plaintiff has four medically determinable impairments which are severe within the meaning of the Regulations: alcohol and drug dependency; major depressive disorder with psychotic features; schizoaffective disorder; and bipolar disorder. *Id.* 18 ¶ 3; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).

5

At step three, the ALJ found that plaintiff's impairments, including the DAA, met listings 12.03 (schizophrenic, paranoid, and other psychotic disorders), 12.04 (affective disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorders). Tr. 18 ¶ 4. Listings 12.03, 12.04, and 12.08 are met if, in addition to meeting specified A criteria, an individual meets the B criteria by having at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[2] *See* Listings 12.03B, 12.04B, 12.08B; *see also* Listing 12.00C (assessment of severity). For the first three functional areas, marked is not the highest severity level; the full range is none, mild, moderate, marked, and extreme. *See* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). In the last area, "repeated episodes of decompensation, each of extended duration" means three episodes within one year or an average of one very four months, each lasting at least two weeks. Listing 12.00C4.

Here, the ALJ found plaintiff to meet the A criteria of each of these listings because of his major depressive disorder. Tr. 19-20. Although the ALJ found plaintiff to have only moderate restrictions of daily living and moderate difficulties in maintaining concentration, persistence, and pace, he found that plaintiff satisfied the B criteria on the basis of marked difficulties in maintaining social functioning and repeated episodes of decompensation, each of extended duration, specifically three such episodes. *Id.* 20. The ALJ thus found that with the DAA plaintiff is disabled. Plaintiff does not challenge these findings.

---

[2] Each of these listings can also be met by satisfaction of C criteria, but they are not at issue in this case. *See* Listings 12.03, 12.04, 12.08. Listing 12.09 is met when there are behavioral or physical changes associated with the regular use of substances that affect the central nervous system and any one of various specified listings is met, including the applicable listing here, listing 12.04.

6

Because there was medical evidence that plaintiff has DAA, the ALJ then evaluated whether the DAA is a contributing factor material to the determination of disability, as directed by the Regulations. 20 C.F.R. §§ 404.1535(a), 416.935(a). He revisited the relevant steps of the five-step analysis, evaluating the limitations that would remain if plaintiff stopped using drugs or alcohol. He found at step two that plaintiff's remaining limitations would be severe. Tr. 20 ¶ 5. At step three, however, he determined that the impairments would not meet or medically equal any listings. *Id.* 21 ¶ 6. He based this finding on the determination that plaintiff would have only moderate, rather than marked, difficulties in social functioning and no, rather than repeated, episodes of decompensation if he stopped using alcohol and drugs. *Id.* 21.

The ALJ next determined that if plaintiff stopped using drugs or alcohol, he would have the exertional RFC to do a wide range of medium work and, specifically, would be able to lift and carry up to 50 pounds occasionally, and 25 pounds frequently; push and pull up to 50 pounds occasionally and 25 pound frequently; stand and walk up to 6 hours in an 8-hour workday; and sit up to 6 hours in an 8-hour workday. *Id.* 21 ¶ 7, 24. The ALJ also determined that without the substance use plaintiff's mental disorders would restrict him to unskilled, simple, routine, repetitive tasks ("SRRTs"); preclude work at a job requiring complex decision making, constant change, or dealing with a crisis situation; and permit only occasional contact with co-workers but no contact with the public. *Id.* 24.

Based on this RFC if plaintiff stopped his substance use, the ALJ found at step four that plaintiff could not perform any of his past relevant work. *Id.* 24 ¶ 8. At step five, the ALJ adopted the testimony of a vocational expert and found that, if plaintiff stopped his substance use, he would be capable of making a successful adjustment to work that exists in significant numbers in the

7

national economy, including the unskilled light exertional level jobs of kitchen helper, laundry laborer, and office cleaner. *Id.* 25-26 ¶ 12. The ALJ therefore found that plaintiff's limitations remaining if he stopped his use of drugs and alcohol would not be disabling. *Id.* 26 ¶ 13. The ALJ concluded that plaintiff's DAA is a contributing factor material to the determination of disability and that plaintiff is therefore not under a disability. *Id.*

## II. <u>DISCUSSION</u>

### A.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v.*

8

*Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). However, the ALJ's decision may appropriately be read "as a whole." *Jones v. Barnhart*, 364 F.3d 501, 504-05 (3rd Cir. 2004).

## B. OVERVIEW OF PLAINTIFF'S CHALLENGES TO THE ALJ'S DAA MATERIALITY DETERMINATION

Plaintiff's challenge to the ALJ's decision focuses on the ALJ's determination that plaintiff's DAA is a contributing factor material to the determination of disability. As indicated, to make the materiality determination on DAA, the ALJ is to evaluate which of the physical and mental limitations that the claimant has when using drugs or alcohol would remain if he stopped such use, and then whether any of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b), 416.935(b). In cases where, as here, substance abuse disorders coexist with other mental impairments, the Social Security Administration ("SSA") recognizes that it can be difficult to disentangle the mental limitations imposed by the substance use disorder and those resulting from other mental impairments. *See* Dale Cox, Questions and Answers Concerning DAA from 2 July 1996 Teleconference, No. EM-96200, http://198.173.77.58/ssas/daa-q&a.htm, Ques. 29 (SSA 30 Aug. 1996) ("Cox Mem."). According to SSA policy, the evidence "most useful" to distinguishing

9

between the DAA-imposed limitations and the limitations from other impairments is that relating to a period when the individual is not using drugs or alcohol. *Id.* Ans. to Ques. 29. If it is not possible to separate the limitations imposed by DAA from those resulting from the other mental impairments, SSA policy is that the DAA should be found not to be a contributing factor material to the disability determination. *Id.*

Plaintiff contends that the ALJ erred in not finding that the limitations imposed by plaintiff's DAA and those resulting from his other impairments are too intertwined to be evaluated separately. (Pl.'s Support. Mem. (D.E. 23) at 8-10, 14-15). In the alternative, he argues that to the extent the evidence did make it possible to distinguish the limitations imposed by his DAA from the remaining limitations, the ALJ erred in not finding the remaining limitations disabling. (Pl.'s Support. Mem. at 10-14; Pl.'s Opp. Mem. (D.E. 35) at 2-7). Indeed, plaintiff contends that the ALJ failed to evaluate virtually at all the evidence of plaintiff's limitations when he was not using substances as the Regulations require and, apparently, that the evidence shows that plaintiff would meet the same listings if he stopped using as he did when he was using (except, of course, for listing 12.09 on substance abuse disorders).[3] Under either theory, plaintiff contends the ALJ should have found plaintiff's DAA not to be a contributing factor material to his disability and that the ALJ erred in finding that plaintiff's DAA is material. Each theory advanced by plaintiff's is examined in turn below.

---

[3] With respect to the listings, plaintiff states, for example, "Based on the evidence of record, demonstrating that DAA was not material to the finding of disability and *that the plaintiff otherwise met a disability Listing*, the determination should be reversed." (Pl.'s Support. Mem. at 15 (emphasis added); *see also id.* at 10-11, 13, 14). Plaintiff nowhere contends that he medically equaled a listing, as opposed to meeting it. *See generally* 20 C.F.R. §§ 404.1526, 416.926 (definition and determination of medical equivalence).

## C.  FEASABILITY OF SEPARATE EVALUATION OF PLAINTIFF'S DAA-IMPOSED LIMITATIONS

The record does permit the evaluation of the limitations imposed by plaintiff's DAA separately from those resulting from plaintiff's other impairments. As plaintiff himself acknowledges, drug and alcohol testing of plaintiff and his own testimony and other statements show that he was not using drugs or alcohol after May 2006, through the time of the hearing in September 2007 and his subsequent hospitalization in November 2007.[4] *See, e.g.*, Tr. 477, 479, 661; (Pl.'s Support. Mem. at 9, 10 (admitting abstinence began after May 2006)).[5] Again, the SSA acknowledges evidence relating to such a period of abstinence as the "most useful" in determining a claimant's remaining disabilities if he stopped using. Cox Mem., Ans. to Ques. 29.

Other evidence can, of course, also shed light on a claimant's limitations if he stopped using drugs and alcohol. *Id.*, Ans. to Ques. 33. As discussed below, other such evidence is present in this case, including a medical opinion on the materiality issue. *See, e.g.*, Tr. 361 (2 July 2005 opinion of consulting psychologist Dr. Albertson). Plaintiff's argument that the record does not enable the disentanglement of his DAA-imposed limitations from his other limitations is therefore meritless. In reaching this conclusion, the court need not and does not determine the extent to which, if any, the SSA policy underlying plaintiff's contention—namely, that the inability to disentangle DAA-imposed limitations from other limitations precludes a finding of materiality—has the force of law. *Compare Parra v. Astrue*, 481 F.3d 742, 749-50 (9th Cir. 2007) (policy is SAA's unpromulgated

---

[4] The abstinence does not include the administration of methadone to plaintiff as part of his treatment program. *See, e.g.*, Tr. 19, 660-61.

[5] *Cf.* Pl.'s Opp. Mem. at 2 n.1. In this footnote, plaintiff states that after July 2006, drug tests of him were negative. Negative results after July 2006 are not, of course, inconsistent with plaintiff's having been abstinent after May 2006.

11

interpretation of statute and is entitled to respect but only to the extent that it has the power to persuade (citations and quotations omitted)) *with Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) (treating policy as binding) and *Cutlip v. Commissioner*, No. 5:97CIV154 (STAMP), 1999 U.S. Dist. LEXIS 23497, at *3-10 (N.D. W. Va. 22 Jan. 1999) (policy held binding on SSA).

D.    **SUFFICIENCY OF ALJ'S DETERMINATION ON PLAINTIFF'S DAA-IMPOSED IMPAIRMENTS**

Review of the ALJ's decision, read as a whole, and the evidence of record belies plaintiff's other principal contention, namely, that the ALJ erred in finding plaintiff would not have disabling limitations if he stopped using drugs and alcohol. This same review shows as groundless plaintiff's related allegation that the ALJ did not adequately evaluate the relevant evidence on this issue, including evidence relating to plaintiff's period of abstinence, or explain his determination regarding it.

### 1. ALJ's Findings and Supporting Evidence Addressed in His Decision

For example, in his analysis of plaintiff's RFC, the ALJ finds that "[t]he record shows that absent the alcohol and drug use he received treatment and was doing well after he started taking his prescribed medications and attending therapy regularly." *Id.* 24. Evidence discussed by the ALJ in his decision that supports this finding includes a letter dated 5 March 2007 from the director of an outpatient mental health facility, Southlight Wakeview Clinic, which had been treating plaintiff since May 2006. *Id.* 23-24. As the ALJ accurately states, the letter indicates that plaintiff had always tested negative for drugs and "had responded well to medication and treatment provided by the psychiatrist." *Id.* 23-24 (referring to *id.* 477, director's letter).

The ALJ also notes that plaintiff was hospitalized at Moses Cone Hospital for psychiatric problems on 27 April 2007. *Id.* 19; *see also id.* 486-91 (discharge summary and other records of this

12

hospitalization). However, the ALJ continues that, as indicated in the records of the hospitalization, plaintiff "was in full contact with reality and felt comfortable going home" by 2 May 2007 after psychotherapy and adjustment of his medication. *Id.* 19 (referring to *id.* 487). The ALJ then indicates that by 24 May 2007, with continued outpatient treatment, plaintiff "had not exhibited any signs of anger or spells of verbal abuse . . . [and] was keeping his appointments and taking his medications as required." *Id.* Again, the ALJ's statement accurately reflects the contents of the relevant medical record. *Id.* 496.

The ALJ's finding regarding the efficacy of the treatment plaintiff received and the evidence he discusses supporting that finding are of particular significance to his determination that plaintiff would not be disabled if he stopped using drugs and alcohol. It is well established that "[i]f an impairment can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

In a similar vein, the ALJ finds that plaintiff "has less hospitalization after he stopped his drug and alcohol use." Tr. 21. In accordance with this finding, the evidence the ALJ reviewed in the decision accurately showed that plaintiff had multiple mental health-related hospitalizations before his abstinence began and one pre-decision hospitalization after the abstinence began, that at Moses Cone Hospital. *Id.* 18-19.[6]

There is also, of course, the post-decision hospitalization in November 2007 that was the subject of the medical records plaintiff submitted to the Appeals Council. *See id.* 629-42. However,

---

[6] The pre-decision hospitalizations were as follows: (1) Community Memorial Pavilion, 5-9 Apr. 2004 (Tr. 143-54); (2) Community Memorial Pavilion, 23-26 Apr. 2004 (*id.* 155-67); (3) Community Memorial Pavilion, 24-27 May 2004 (*id.* 168-73, 385-91); (4) Community Memorial Pavilion, 13-18 Aug. 2004 (*id.* 376-84); (5) John Umstead Hospital, 15-17 Mar. 2005 (*id.* 246-55, 442-63); (6) John Umstead Hospital, 31 Aug. to 14 Sept. 2005 (*id.* 403-41); (7) Moses Cone Hospital, 27 Apr. to 2 May 2007 (*id.* 486-91).

this later hospitalization, coming within two months after the ALJ's decision, does not contradict the ALJ's finding that plaintiff's mental health-related hospitalizations decreased when he was abstinent. They dropped in frequency from one about every four and a half months (six between April 2004 and May 2006) to about one every nine and a half months (two between May 2006 and November 2007).

The outcome of the November 2007 hospitalization was also consistent with the ALJ's finding regarding the efficacy of plaintiff's treatment when abstinent. The discharge report on the hospitalization, by psychiatrist Veeraindar Goli, M.D., states that it resulted in a "sig nificant improvement of his mood, anxiety and hallucinations" through changes in his medication and that plaintiff reported that "he was much better." *Id.* 635.[7] Indeed, Dr. Goli gave plaintiff a Global Assessment of Functioning ("GAF") score of 86 (*id.* 634), indicating "[a]bsent or minimal symptoms . . . good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns." Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) ("DSM-IV-

---

[7] In certain cases where evidence is submitted for the first time to the Appeals Council, remand to the Commissioner for findings on such new evidence may be needed to permit meaningful judicial review. *King v. Barnhart*, 415 F. Supp. 2d 607, 611 (E.D.N.C. 2005); *see also Cagle v. Barnhart*, No. 705CV504, 2006 WL 544005, at *3-4 (W.D. Va. 6 March 2006) (remand ordered where new evidence before Appeals Council served to create further conflict in the administrative record); *Myers v. Barnhart*, No. 705CR066, 2005 WL 3434978, at *4 (W.D. Va. 12 Dec. 2005) ("While the Appeals Council is not required by its regulatory scheme to provide a detailed statement of reasons regarding late-breaking evidence, its failure to deal with such evidence in any fashion meaningful to the district court's substantial evidence review runs the risk of a remand to require the Commissioner to explicitly consider the additional evidence under certain circumstances.") (internal citations omitted); *Riley v. Apfel*, 88 F. Supp. 2d 572, 578-80 (W.D. Va. 2000) (remand ordered where findings of record did not show weight attributed to new conflicting evidence submitted to the Appeals Council or how any factual conflicts created were resolved). Neither party requested such a remand, and none is required. The new evidence is consistent with the Commissioner's decision and substantial evidence supports the decision considering the new evidence as part of the record. *See, e.g., King*, 415 F. Supp. at 611 ("If, upon consideration of the entire record, including the new evidence, the district court cannot conclude that the ALJ's decision was supported by substantial evidence, remand should be ordered.").

TR"). The GAF scale measures a person's overall psychological, social, and occupational functioning. DSM-IV-TR 34.

The finding of less hospitalization underlies the ALJ's determination that plaintiff would have no episodes of decompensation if he stopped using alcohol and drugs. Tr. 21. The determination that plaintiff had repeated episodes of decompensation after using was, of course, one basis of the two required for his determination that plaintiff met the B criteria of the various listings when using. *Id.* 20. The lowering of the severity level for decompensation below the requisite repeated level precluded plaintiff from meeting any of the listings he had been found to meet when using drugs or alcohol, absent an increase in the severity level in other areas. *See* Listings 12.03B4, 12.04B4, 12.08B4. As might be expected, the ALJ found no increase in severity in other areas if plaintiff stopped using.

The post-decision hospitalization in November 2007 is not inconsistent with the ALJ's determination. It and the other hospitalization during plaintiff's period of abstinence, in April to May 2007, do not together meet the definition of "repeated episodes of decompensation, each of extended duration" under the Regulations, which requires three episodes within one year or an average of one very four months, each lasting at least two weeks. Listing 12.00C4.

The other finding underlying the ALJ's determination that plaintiff satisfied the B criteria for the various listings was that plaintiff had difficulties in social functioning at the requisite marked level when using drugs or alcohol. Tr. 20. If plaintiff stopped using, the ALJ found that plaintiff would have only moderate difficulties in social functioning. *Id.* 21. Therefore, independent of the lowering of the severity level for decompensation, the lowering of the severity level for social

15

functioning precluded a finding that plaintiff would meet any of the various listings in the absence of an increase in severity in other areas.

In support of his finding of moderate difficulty, the ALJ cited statements by plaintiff on 9 February 2005 to Anthony G. Carraway, M.D., the sole examining state agency psychiatric consultant in the case. *See id.* 21. The ALJ wrote that plaintiff "visits his sister's house and do[es] stuff in her yard and he also helps his f[r]iends out in working on a car." *Id.* 21 (referring to *id.* 235, Dr. Carraway's report). These statements demonstrated plaintiff's ability to interact appropriately with others. In contrast, the ALJ had based his finding of a marked limitation in social functioning on the rage plaintiff testified he felt "just below the surface" and the fact that a fit of rage precipitated the April to May 2007 visit at Moses Cone Hospital. *Id.* 20. However, as the ALJ noted in his decision, this hospitalization and follow-up outpatient treatment had resulted by 24 May 2007 in plaintiff "not exhibit[ing] any signs of anger or spells of verbal abuse." *Id.* 19.

The ALJ also found that during his period of abstinence "[plaintiff] was able to [take] care of his personal needs as well as activities of daily living," another functional area included in the B criteria. *Id.* 24. Indeed, the ALJ found that if plaintiff stopped using drugs and alcohol, he would have only mild restrictions in activities of daily living. *Id.* 21. The ALJ based this finding on plaintiff's testimony that "he was able to vacuum *every day*, straighten up the house and cook about once a month . . . [and] tried to fix items that were broken." *Id.* 21 (referring to *id.* 663) (emphasis added). In contrast, the ALJ had found plaintiff to be moderately limited in the area of activities of daily living when using alcohol or drugs, referring to plaintiff's statements to examining consulting psychiatrist Dr. Carraway on 9 February 2005 that "he was able to cook and clean *sometimes*." *Id.* 20 (referring to *id.* 235, Dr. Carraway's report) (emphasis added). Needless to say, neither a

16

moderate nor a minimal level of restriction is sufficient to satisfy the B criteria in this functional area.[8]

With respect to the remaining functional area included in the B criteria—concentration, persistence, or pace—the ALJ found that plaintiff would have only moderate difficulties if he stopped using alcohol and drugs. *Id.* 21. He based this determination on the finding by Dr. Carraway in his 9 February 2005 evaluation that "plaintiff's concentration and attention were intact." *Id.* This is the same level attributed to plaintiff when he was using. *Id.* 20. The moderate level is, of course, inadequate to meet the B criteria in this area. The ALJ could appropriately rely on Dr. Carraway's assessment as an examining state agency consultant given, among other considerations, the consistency of his opinion with other evidence and the support for it in his evaluation. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2-3 (2 July 1996).

Thus, the ALJ found that plaintiff minimally satisfied various mental disorder listings when using drugs and alcohol by reaching the lowest requisite level of severity of impairment in two functional areas in the B criteria. Plaintiff does not challenge these severity ratings as too low (or otherwise). Not surprisingly, when evaluating plaintiff's impairments if he stopped using, the ALJ found that the restrictions in these two areas were not as severe, the restrictions in the two other areas did not increase in severity, and the listings were therefore not met.

Another basis stated by the ALJ for his determination that plaintiff's mental impairments would not be disabling if he stopped using alcohol and drugs is that "[plaintiff's] physicians never indicated that the [plaintiff's] impairments could reasonably be expected to result in any work-

---

[8] Plaintiff does not appear to contest his ability to perform activities of daily living. He states in his supporting memorandum: "*The fact that the plaintiff was able to perform activities of daily living*, while being on a regiment of significant medication, continuous mental health treatment and occasional hospitalization, does not disprove a severe, disabling mental impairment." (Pl.'s Support. Mem. at 14) (emphasis added).

17

related limitations or that the claimant was unable to work." Tr. 24. Given the significant weight the opinions of treating physicians can carry, the absence of such opinions does detract from plaintiff's ability to prove that he would be disabled if he stopped using. *See, e.g., Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996).

Therefore, contrary to plaintiff's contentions, the ALJ did set out reasons for his determination that plaintiff would not be disabled if he stopped using drugs and alcohol that are supported by substantial evidence cited by the ALJ. While, as is not uncommon, the ALJ could arguably have discussed certain evidence more extensively or organized portions of his analysis more effectively, these considerations do not invalidate the ALJ's decision. An ALJ is not required to discuss every piece of evidence contained in the record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989). Nor is an ALJ required "to use particular language or adhere to a particular format in conducting his analysis" so long as the decision, "read as a whole," demonstrates that the ALJ considered the appropriate factors in reaching a conclusion, as here. *Jones*, 364 F.3d at 504-05.

### 2. Additional Supporting Evidence of Record

Other evidence of record also supports the ALJ's determination that plaintiff would not be disabled if he stopped using. This evidence includes an outpatient treatment note from psychiatrist David Mauney, M.D. of Carolina Behavioral Care, dated 29 June 2006 and thereby during plaintiff's abstinence, indicating that notwithstanding some anger management problems plaintiff had no

18

significant symptoms of depression, psychosis was not evident, and "[o]verall . . . he is doing pretty well." Tr. 559. In addition, in his 9 February 2005 evaluation of plaintiff, Dr. Carraway found plaintiff able to perform simple repetitive tasks while noting that his "prognosis would certainly be improved if he would discontinue all illicit drug use and alcohol use." *Id.* 236.

Further, none of the three nonexamining state agency consultants who conducted mental evaluations of plaintiff—psychiatrist William Oliver Mann, D.O., psychologist Arlene M. Cooke, Ph.D., and psychologist W. W. Albertson, Ed.D.—found in the Psychiatric Review Technique forms ("PRTFs") they completed that plaintiff had marked difficulties in social functioning or that his mental impairments satisfied the B criteria for the mental health listings. *Id.* 198 (Dr. Mann), 271 (Dr. Cooke), 372 (Dr. Albertson). In the Mental RFC form Dr. Cooke also completed, he expressly found plaintiff able to perform SRRTs in a low-stress setting with limited social interactions. *Id.* 258. Although Dr. Albertson found plaintiff unable to perform SRRTs in the Mental RFC form he completed, he also determined that plaintiff's drug and alcohol abuse (abbreviated "DAA") were material. *Id.* 360, 361; *see also id.* 374 (same finding of materiality in PRTF).

Significantly, the assessments by all three consultants were done before plaintiff began his period of abstinence: Dr. Mann's on 23 July 2004 (*id.* 188), Dr. Cooke's on 30 March 2005 (*id.* 261), and Dr. Albertson's on 2 July 2005 (*id.* 362). By finding plaintiff disabled while using drugs and alcohol, the ALJ was treating him as more severely impaired than this particular evidence would have otherwise indicated.[9] The opinions of such nonexamining sources may be given meaningful

---

[9] The ALJ discussed Dr. Mann's assessment in connection with his finding on the listings when plaintiff was using drugs or alcohol, but his discussion of plaintiff's impairments if he stopped using does not indicate that he was relying on it in that analysis, even though, as indicated, it is supportive of that analysis.

19

weight when, among other considerations, they are consistent with other evidence and adequately supported, as here.[10] *See* 20 C.F.R. §§ 404.1527(f), 416.927(f).

### 3. Other Considerations Supporting ALJ's Determination

Although finding that plaintiff would not be disabled if he stopped using drugs and alcohol, the ALJ manifestly gave considerable weight to the evidence of plaintiff's mental impairments. He ruled that plaintiff's mental impairments would be severe if he stopped using. Tr. 20. He also included significant limitations in his RFC determination based on the mental disorders. *Id.* 24. Specifically, the ALJ found that plaintiff's mental disorders would restrict him to unskilled SRRTs; rule out work at a job requiring complex decision making, constant change, or dealing with a crisis situation; and allow only occasional contact with co-workers and no contact with the public. *Id.*

Plaintiff argues that the ALJ erred by not making a finding on whether plaintiff's impairments when abstinent met a listing, as opposed to making the finding based on the hypothetical circumstance if plaintiff stopped using drugs and alcohol. Plaintiff's dispute is not with the ALJ, but the law. The Regulations required the ALJ to evaluate plaintiff's limitations "if [he] stopped using drugs or alcohol." *See* 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). Evidence relating to periods of abstinence serve to shed light on this issue. *See* Cox Mem., Ans. to Ques. 29.

Plaintiff also contends that the ALJ should have found him disabled if he stopped using alcohol and drugs because he continued to have serious mental health diagnoses after becoming abstinent. However, "the law is clear that a 'mere diagnosis . . . says nothing about the severity of the condition.'" *Gowans v. Astrue*, Civ. No. SKG-06-2817, 2008 WL 179479, *9 (D. Md. 17 Jan.

---

[10] Although plaintiff argues that Dr. Albertson does not adequately support his opinion on materiality, he presents the opinion with a summary of plaintiff's psychiatric history replete with references to plaintiff's substance abuse (Tr. 361), explains that plaintiff "continues to use marijuana and opiates" (*id.* 360) and "continues to abuse substances" (*id.* 374), and makes the specific finding that plaintiff suffers from polysubstance abuse (*id.* 370).

20

2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). Moreover, of course, when a condition can be reasonably controlled by medication or treatment it is not disabling, as here. *Gross*, 785 F.2d at 1166.

The court has considered the other arguments advanced by plaintiff, but finds them wanting based on the principles discussed above. The court concludes that the ALJ applied the proper legal standards, plaintiff failed to carry his burden of proof on the issue of the materiality of his DAA, and the ALJ's decision is supported by substantial evidence. *See Wheat v. Barnhart*, 318 F. Supp. 2d 358, 362, 363-65 (D. La. 2004) (affirming ALJ's denial of claim for DIB and SSI on grounds that that claimant would not be disabled if he stopped his alcohol abuse).

## III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion for judgment on the pleadings be GRANTED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days, or such other period as the court may direct, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 8th day of July, 2009.

James E. Gates
United States Magistrate Judge

21